GEORGE C. FENDERSON, PLAINTIFF IN ERROR, v. THE ATLANTIC CITY RAILROAD COMPANY, DEFENDANT IN ERROR.

1. In an action by an employe against his employer to recover damages by reason of an injury resulting from the use of appliances and machinery furnished, it must appear by affirmative proof on the part of the employe that the employer has failed in the exercise of reasonable care in providing safe and suitable appliances and machinery, and if it does not so affirmatively appear the employe will be nonsuited in his action against his employer.

2. If a railroad company exercises reasonable care in providing a safe and suitable coupler for the connection of the cars of its train, and also exercises reasonable care in inspecting and keeping the coupler safe and suitable, it will not be liable for an injury resulting from its becoming suddenly out of repair and before an opportunity can be had to remedy its defective condition.

On error to the Supreme Court.

For the plaintiff in error, *John W. Wescott.*

For the defendant in error, *Joseph Thompson.*

The opinion of the court was delivered by

LIPPINCOTT, J.    The plaintiff below, who is plaintiff in error, sued the Camden and Atlantic Railroad Company, the defendant in error, to recover damages for personal injuries. At the trial, after the evidence for the plaintiff was submitted, the trial court directed a judgment of nonsuit to be entered. Upon this judgment error has been assigned, and it is now before this court for review.

The plaintiff was an employe of the defendant and in its service as a brakeman on one of its engines at Atlantic City, and it is alleged that the injury occurred by reason of the negligence of the defendant in failing to provide a proper coupling attaching the cars of the defendant company together, whereby the cars became detached and came in contact with

the plaintiff, who was on the engine, and seriously injured him. The pleadings in the cause allege this neglect as the sole ground of action, and the evidence in the cause at the trial was directed to the proof of this point.

The facts, as developed on the trial, are that the plaintiff was working in the terminal yard of the defendant, at Atlantic City, and on the 3d day of July, 1892, met with this accident. A train of cars, forming a heavy passenger express train from Philadelphia, had just arrived at the depot at Atlantic City. After its passengers had been discharged, the shifting engine upon which the plaintiff was employed as a brakeman ran into the depot and attached itself to the train, for the purpose of pulling the train, with the train engine following, out of the depot and off the main track and out upon a street called Baltic avenue, for the purpose of having the main track clear for another section of the train or for another train. Baltic avenue runs at right angles across the terminal yard at Atlantic City, and the connection with the track on that street with the main track is made with a switch and a curved connecting track, and it became necessary to pull this train with the shifting engine, beyond the switch which made connection with the curve. This was done, and then the shifting engine was detached from the train, to allow the train engine to draw the train upon the curved track, and thus upon Baltic avenue. Whilst this was being done it became the duty of the engineer of the shifting engine to follow the train upon the curve to Baltic avenue or to some distance towards it, so as to leave the main track perfectly free for the next train to run into the depot. Whilst the train was being drawn along the curve, with the shifting engine following at a short distance, at a very slow pace, the cars of the train ahead of the shifting engine became detached into two parts, and the shifting engine ran into the rear car, injuring the plaintiff, whose duty required him to be at that end of the shifting engine which came into contact with the car. He was quite seriously injured. The proof in the case shows clearly that, upon the two parts of the train separating

or becoming detached, the air brakes did their proper work instantly and brought the rear detached car to an immediate standstill, and that the injury occurred by reason of the shifting engine not stopping, but continuing to go on until it ran into the rear detached car. It is in proof that the cars of this train were connected with each other by what was known as the "Miller" coupler, or the system known as the "Miller" coupling, a well-known appliance for this purpose, operating automatically to some extent. It appeared in the case that, upon some of the cars of this train or in use upon the defendant's road, what is known as safety chains were used in aid of the "Miller" coupler. These safety chains are two or three links of chain attached to the side of a car and to a hook and link on the side of the next car, and the chain thus attached, when connected, is called a safety chain. It appeared in the evidence that when the rear detached portion of the train stopped the shifting engine was following quite slowly about a car length behind. It does not appear by what sort of coupler the two cars which parted were attached to each other. It is contended that they were connected by the "Miller" coupler, but with no safety chain. It also appeared quite clearly in the evidence that had the engineer or those in charge of the shifting engine kept a careful watch over the movements of the engine it could have been stopped before it came in contact with the rear car of the detached portion of the train. The condition of affairs seems not to have been observed until the moment of contact, when the plaintiff endeavored to save himself from injury, but was unable to prevent himself from being caught between the car and engine.

The trial court found, from the undisputed evidence, that the kind of coupler upon the car when the train parted was not identified; that the evidence of the witnesses was very general on this subject, and that when dissected, this assertion that the coupler was a "Miller" one was founded on hearsay only, and that this failure to identify any particular car as the one having a defective coupling demanded that judgment of nonsuit be directed. The trial court also rested the judg-

ment upon the ground that the only evidence adduced was the mere occurrence of the accident, and that, in this case, was not *prima facie* proof of negligence of the defendants towards the plaintiff, its employe.

Upon a review of the evidence it clearly appears that there was an entire want of any identification of the cars which were detached from each other, and the entire want of any identification of the character of the coupling by which the cars were attached to each other, and an entire want of proof against the defendant tending to show negligence in not supplying a reasonably proper appliance for coupling the cars together.

There is also evidence indicating beyond contradiction negligence on the part of the engineer of the shifting engine causing the accident, also evidence of negligence on the part of the plaintiff contributing to the injury. There is no evidence, so far as it appears in the case, showing that the coupler was in anywise defective, unless the mere separation of the cars can be considered evidence tending in that direction, and even if this conclusion was conceded, no evidence that the defendants or their agents had any knowledge of such defectiveness, or ought to have had knowledge of it. There is no evidence of the want of reasonable inspection, nor is there any affirmative proof that the plaintiff had no knowledge of the defective coupling, if it existed. A careful consideration of the evidence reveals only the barren fact that there was an accident to the plaintiff, caused by the separation of the train of cars into two parts and a collision of the rear portion with the shifting engine.

These facts require only the application of familiar principles of law in order to sustain the conclusions of the trial court.

The rule is that the company is bound to use only reasonable care to prevent accidents to its employes, and to this end is bound to exercise reasonable care in furnishing suitable machinery and appliances, and to use a like reasonable care in keeping them in proper repair, as the risks assumed by the

employes are not those which are brought about by the negligence of the company in these respects. A railroad company is not held to the exercise of extraordinary care towards its employes, as in the case of passengers; but it is only required to furnish such appliances as are reasonably calculated to insure the safety of its employes; nor is the company responsible for an injury resulting from what is otherwise a suitable appliance becoming suddenly out of repair, unless it has been guilty of negligence in not ascertaining the defect and remedying it. Thus, if the coupling of a freight car suddenly becomes out of repair, the company using the same will not be liable for an injury to an employe in consequence thereof, unless its attention had been called to the defect, or the company, by the exercise of a reasonable degree of care, should have discovered the defect and had an opportunity to make the needed repair. 3 *Wood Railw. L.* 1451, § 373. The measure of the master's duty is to exercise reasonable care in providing instrumentalities for the servant in the prosecution of the business, and *prima facie* he is presumed to have done so; and if he has done so, no liability attaches for defects therein, unless negligence can be imputed to him in reference to these inspections and repairs. He is not bound to adopt the latest improvements in machinery, nor is he liable for an accident which would not have occurred if such improvements had been adopted. He is not required to furnish the best appliances possible to be obtained, but they must be reasonably safe, and kept so.

Applying these principles to the proof here in this case, in order to sustain a recovery it must have affirmatively appeared that the injury resulted from an unsound or defective coupler; that the master had had, or ought to have had, knowledge of the defect; that is, that the company had failed to furnish such a coupler as was reasonably calculated to insure the safety of the plaintiff, or had been guilty of negligence in not keeping it safe, or ascertaining its defect and repairing it or supplying another which was reasonably suitable.

Now, in this case, no proof exists, directly or by attendant

circumstances, in the case of the plaintiff, of these affirmative propositions necessary to a recovery, unless it be that the circumstance of the mere occurrence of the accident fills the necessary measure of proof.

But upon this point there exists the conclusive authority of this court. In the case of *Bahr* v. *Lombard et al.*, 24 *Vroom* 233, Mr. Justice Garrison, delivering the opinion of the court, says: "The principle is quite institutional, that whenever a right of action springs from the conduct of a defendant, the plaintiff must present proof of the facts necessary to the recovery which he seeks. It is, furthermore, the general rule of law that the mere proof of the occurrence of an accident raises no presumption of negligence."

The trial court determined that there were no facts and circumstances which indicated any negligence on the part of the defendant. The case being devoid of such proof, the judgment of nonsuit ought to be affirmed on that ground. But the conclusion of the court is also that the plaintiff was himself guilty of negligence contributing to the accident. The facts also tend very strongly to the result that the negligence of the engineer of the shifting engine was one of the causes of the injury of the plaintiff. The engineer's negligence was the negligence of a fellow-servant of the plaintiff and would debar him from a recovery.

I shall vote for an affirmance of the judgment of nonsuit.

*For affirmance*—THE CHIEF JUSTICE, DEPUE, LIPPINCOTT, MAGIE, VAN SYCKEL, BROWN, SMITH. 7.

*For reversal* — THE CHANCELLOR, ABBETT, DIXON, BOGERT. 4.