COMMONWEALTH ROOFING COMPANY, PLAINTIFF IN ERROR, v. PALMER LEATHER COMPANY, DEFENDANT IN ERROR.

Argued March 17, 1902—Decided June 16, 1902.

1. A Circuit Court held by a judge of a Court of Common Pleas, in pursuance of the act of March 23d, 1900 (*Pamph. L., p.* 349, §§ 37, 38), is constitutionally organized.

2. Under that act the judge of the Court of Common Pleas derives his authority to hold the Circuit Court, not from the request of the justice of the Supreme Court, but from his appointment as judge of the Court of Common Pleas.

3. If, under a contract to do certain work in a specified manner for a specified price and to guarantee the work against certain defects for a specified time, the contractor does the work improperly; the other party may, in a suit for the price, recoup the damages for improper performance, without regard to the guaranty.
4. If the plaintiff sues for the price of the work done under a contract, and the defendant, with the general issue, gives notice that he will defend because of defective performance of the work, and the plaintiff intends to insist that the defects arose from the failure of the defendant to perform his obligation under the contract, the plaintiff should give notice of such special matter under section 119 of the Practice act.
5. An unambiguous clause in a written contract cannot be modified by showing similar but somewhat variant clauses in contracts between one of the parties and third persons.
6. Exceptions taken at a trial, but not discussed on error, need not be considered by the court of review.

On error to the Union Circuit Court.

For the plaintiff in error, *Maximilian T. Rosenberg.*

For the defendant in error, *Glen & Rosinger.*

The opinion of the court was delivered by

DIXON, J. The first question to be decided in this cause arises from the fact that the judge of the Court of Common Pleas in Union county, on the request of the justice of the Supreme Court presiding in that district and in accordance with the act of April 2d, 1891 (*Gen. Stat., p.* 1028), now sections 37 and 38 of the act of March 23d, 1900 (*Pamph. L., p.* 349), held the Union County Circuit Court at which the case was tried. The plaintiff insists that it was a violation of the constitution thus to organize the Circuit Court.

Waiving the question whether the plaintiff, who brought on the trial, can now object to the competency of the tribunal, we think the court was legally constituted.

The constitution (article 6, section 5, paragraph 2) provides that "the Circuit Court shall be held in every county of this state, by one or more of the justices of the Supreme Court, or a judge appointed for that purpose." It is silent

as to the mode in which a Circuit judge shall be appointed, except that he, in common with all civil officers, is to be commissioned by the governor and his term of office is to commence on the day of the date of his commission.

Under these provisions it is clear that the power of directing how such a judge should be appointed was vested in the legislature as a part of the general legislative authority.

In virtue of that authority the legislature passed the act of 1891, which, in effect, declared that a person appointed to be a law judge of the Court of Common Pleas should, *ipso facto,* be appointed to hold the Circuit Court, and in view of that law the judge who presided at the trial was appointed and duly commissioned by the governor. In our judgment the constitution, the statute and the appointment and commission completely vested in the judge the power to hold the Circuit Court.

But it is argued that the clause of the statute which confines the exercise of his authority to times when he is "thereunto requested by the justice of the Supreme Court," in effect, confers on such justice the power of appointing the Circuit judge, and thus is inconsistent with the constitutional division of the powers of government.

We do not so regard the matter. There are many instances, in every department of the public service, where the right of an officer to exercise his authority may depend upon some voluntary act of another officer in whom the same authority resides, and who possesses the primary right to perform the official functions; but in such cases it has never been considered that the official authority of the substitute was derived from the officer who gave place to him.

The act of 1891 conferred the power of appointing a person to hold the Circuit Court upon the governor, with the advice and consent of the senate, such power to be exercised in the appointment of a judge of the Common Pleas. But, because the justice of the Supreme Court had constitutionally the right to hold the Circuit Court, and he could not hold it in conjunction with another judge who was not a justice of the Supreme Court, it was proper that the legislature should

not attempt or even seem to supersede his right, and should provide against the possibility of conflicting claims. To this end the right to determine whether the justice of the Supreme Court or the judge of the Common Pleas should hold the Circuit Court on any stated occasion was conceded to the former official. Whether the justice should express his determination by absenting himself, or by a request or an order, was a detail clearly within legislative discretion, but his determination was certainly not the source of the judicial authority of him who was entitled to act in his stead.

We discover no infringement of constitutional dictates in the organization of the court by which this case was tried.

We proceed therefore to consider the complaints made as to the mode of trial.

The suit was brought to recover the price of laying four concrete floors and of constructing four nests of tanning vats, under a written contract, by which the plaintiff agreed to do the work according to certain plans and specifications in a first-class manner. The contract contained also the following clause: "The floors specified to have our guarantee not to crack or break up for a period of five years, and the vats to be water tight from all causes of natural wear and tear for the period of five years from the date of completion." The real controversy turned on the claim of the defendant for a reduction in the price because the work was not done and completed as the contract required. On this claim the plaintiff contended that the defendant could have no redress except under the written guaranty.

We deem this contention groundless.

The plaintiff's obligation was twofold—*first,* to do the work according to the plans and specifications in a first-class manner, and *second,* to guarantee the floors not to crack and break up, and the vats to be water tight from all causes of natural wear and tear for a period of five years. Each branch of this obligation was distinct from the other. The plaintiff could not fulfill its obligation by laying floors and making vats otherwise than as specified, even though the floors did not crack and the vats did not leak for five years, any more

than it could by laying the floors and making the vats as specified and yet repudiating its guaranty. The importance of keeping the first branch of the plaintiff's obligation distinct from the second is shown by the testimony, on behalf of the defendant, that if the floors had been laid as specified they would last thirty-five or forty years, while, as they were laid, they would last only eight or ten years. Such a difference could not be made up by fulfilling the guaranty. The rights of the parties, in case of defective construction, are not difficult to discern. In such case the defendant would be entitled to do the work as the plaintiff should have done it and to charge the fair cost thereof against the plaintiff; and then to the work so done the plaintiff's guaranty would attach.

This view disposes also of the plaintiff's request "that the jury should be instructed to consider the value of the warranty in estimating the defendant's damages." The warranty had no bearing on the claim that the original construction was defective.

The next complaint of the plaintiff is because of the refusal of the trial court to charge the jury that "if the failure of the defendant to have the place ready for the plaintiff to begin work at the proper time, caused the work to be delayed until cold weather had set in, the plaintiff is not liable for defects attributable to the cold weather."

To this there are two answers.

The first is that the plaintiff had not presented such an issue by its pleadings. Its declaration was on the common counts, in response to which the defendant pleaded the general issue, and gave notice that it would prove defective performance of the contract and claim to recoup the consequent damages. If the plaintiff intended to avoid this claim, by showing that the defect was caused by the defendant's failure to prepare the place for the plaintiff's work in accordance with the contract, it should have given notice of such special matter, under section 119 of the Practice act. Not having done so, the present ground of complaint is precluded.

The second answer is that the testimony at the trial did

not fairly present the question whether the defendant had failed in this particular. The contract was not made until October 17th, 1900, and its terms indicated that the premises were not yet ready for the plaintiff's work. That work was begun during the same month, or early in the next. While in progress some delay was caused by concurrent operations in the building, but it does not appear to have been chargeable to the defendant, and the plaintiff made no complaint at the time concerning it. Under these circumstances the fact that cold weather rendered the plaintiff's performance more difficult formed no excuse for defective work, even if such excuse had been duly pleaded.

The next complaint of the plaintiff is that the court refused to admit in evidence certain guaranties which the plaintiff had given to other parties, for the purpose of showing the meaning of the guaranty clause in the agreement with the defendant.

This evidence was rightly excluded, for there is no ambiguity on this head in the present contract, and if there were, the variant forms of contract between the plaintiff and other parties would throw no light on its meaning.

The last complaint made in argument was as to the plaintiff's claim of $50.92 for extra work. We agree with the trial judge that there was no evidence that the defendant had authorized this work or become liable for it.

Other exceptions taken at the trial were not adverted to by counsel before this court, and hence need not be considered. *Lewis* v. *Lewis,* 49 *Atl. Rep.* 453.

We find no error requiring reversal of the judgment, and it is affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, VAN SYCKEL, DIXON, GARRISON, COLLINS, FORT, GARRETSON, HENDRICKSON, PITNEY, BOGERT, KRUEGER, ADAMS, VREDENBURGH, VROOM. 15.

*For reversal*—None.