68 707
69 520

CORNELIUS HOPWOOD, DEFENDANT IN ERROR, v. BENJAMIN ATHA & ILLINGSWORTH COMPANY, PLAINTIFF IN ERROR.

Argued November 19, 1902—Decided March 2, 1903.

1. Plaintiff's evidence tended to show that a chain furnished by the defendant, his employer, for the use by the plaintiff and others in lifting heavy objects, broke while carrying a weight considerably less than it was designed to bear, and under circumstances that excluded the existence of any immediate cause other than the weakness of the chain. There was evidence tending to show that the chain was an old one; that its links were materially worn where they bore upon each other; that this wear was sufficient to weaken the chain and was easily discoverable upon inspection, and that the link which broke parted at one end, where the wear had occurred. There was in the plaintiff's case no evidence that the employer had caused any inspection, test or repairs of the chain to be made prior to the occurrence, nor any evidence of negligence on the part of the plaintiff or those who, with him, were using the chain. In an action to recover damages for personal injuries sustained by the plaintiff through the breaking of the chain—*Held,* that a motion to nonsuit was properly refused.

2. There being nothing to show that the duty of inspecting or re-pairing the chain had been imposed upon or assumed by the plaintiff and other workmen who were using it, and nothing to show that such inspection and repair were incidental to its use— *Held*, that those employes whose duty it was to inspect and repair were not fellow-workmen engaged in a common employment with the plaintiff.

3. The refusal of a motion to direct a verdict in favor of the de-fendant, where the bill of exceptions does not show that any ground was assigned for the granting of the motion, will not be considered upon writ of error.

4. Exceptions not discussed in argument need not be considered.

On error to the Supreme Court.

For the plaintiff in error, *Edward A. & William T. Day.*

For the defendant in error, *Samuel Kalisch.*

The opinion of the court was delivered by

PITNEY, J. The plaintiff below was employed as an ordi-nary laborer in the steel foundry of the defendant company. At the time of the occurrence that gave rise to this action he was engaged with other workmen in moving from one part of the works to another certain heavy iron frames known as "flasks" or "boxes." In so doing they were required to lift the flasks from a tram car to the floor of the foundry, using a hoisting-crane for this purpose. In order to facilitate hand-ling, the several flasks were formed with trunnions on either side. The evidence does not clearly show the construction of the crane, but it does show that the hoisting-chain or other lifting mechanism terminated in an inverted hook that was raised or lowered with the aid of power.

In order to attach the burden to this lifting apparatus there was in use a detachable steel chain, known as a "sling-chain." This contrivance consisted of two pieces of chain, each about five feet six inches long, called "branches," which were joined together by a heavy ring that fitted over the inverted hook just mentioned. Each of the branches terminated at its outer end in a ring of suitable size to receive one of the trunnions

of the flask. When in use, supporting its burden, the sling-chain hung from the hook of the crane in the shape of an inverted letter V.

At the time of the occurrence in question the workmen had brought the swinging boom of the crane to a position above the loaded car, had attached one of the flasks to the crane by the use of the sling-chain in the manner just indicated, and had placed several flasks upon the one thus attached, thereby making up a load of about seven thousand two hundred pounds. The load was lifted by the crane so as to be clear of the car, and the men were swinging the flasks around towards the point where they were to be deposited. At this juncture one of the branches of the sling-chain broke by the parting of a link about eighteen inches from the heavy ring. The load of flasks fell upon the plaintiff, seriously injuring him. This action was brought to recover compensation from his employer for the injuries thus sustained, and resulted in a judgment in his favor in the court below. Reversal is asked for alleged trial errors.

There was a motion to nonsuit based upon three grounds, viz. :

*First.* For want of evidence of negligence on the part of the defendant.

*Second.* Because of contributory negligence on the part of the plaintiff, and

*Third.* Because the negligence, if any, that resulted in the plaintiff's injury was that of a fellow-servant.

With respect to the first ground : The evidence showed that the sling-chain, as well as all the other appliances in question, was supplied by the employer for the use of the plaintiff and those who were working with him. The law therefore imposed upon the employer the duty of using reasonable care to furnish a chain that was reasonably safe for such use, and of using reasonable care to keep it in a reasonably safe condition. And if (as admittedly was the case) the continued use of the chain tended to wear out the metal of the links where they bore upon each other, and thereby seriously impair the strength of the chain, the employer was under a duty to exer-

cise reasonable care about having the chain inspected at reasonable intervals so that it might be kept in reasonably good repair.

There was no evidence tending to show that when the sling-chain was originally supplied it was not entirely sound and sufficiently strong for the purposes for which it was intended.

But as to its state of repair at the time of the accident the case stood otherwise. The links were each about two inches in diameter, and the thickness of the metal of each link, where not worn, was about one-quarter or three-eighths of an inch. From the evidence introduced in behalf of the plaintiff, it did not distinctly appear how long the chain had been in use. One of his witnesses, who examined it immediately after the accident, testified that its links were very badly worn where they came together; that he observed this to be true of six or eight links near the point where the break occurred; he also testified that the chain was an old one. He does not appear to have seen the link that was broken. Two witnesses who did see it testified that it was broken clean through at the end of the link, where the links were coupled together; one of them says that it was worn "one-fourth part off." These witnesses also testified in substance that several links in that part of the chain nearest to the point of fracture were seriously worn with use. One witness, on being pressed to say how much the links were worn, "couldn't say exactly how much; it was pretty near half worn." There was evidence tending to show that the broken chain was taken at once to the blacksmith shop. The blacksmith's helper then testified that he examined it; that it was an old chain; that the links throughout nearly the whole length of the chain were worn with use where they bore upon each other; that the effect of this wear was to weaken the chain, and that there was no difficulty in discovering the condition of the links by an examination of the chain. At the close of the plaintiff's case there was nothing to show that the chain had at any time previous to the accident been examined, inspected or repaired. One witness had testified that the chains were "supposed to be" inspected every Sunday, but under pressure of cross-ex-

amination he admitted that he knew nothing about it.   There was evidence tending to show that the weight carried by the chain when it broke was much less than what it was intended to bear.   In the cross-examination of the plaintiff's witnesses an attempt was made to show that as the load of flasks was swung around from the car by the workman it was permitted to strike the top of a heap of sand, and that this caused a jar that produced a sudden increase of strain upon the chain. This attempt was not successful; the witnesses asserting, in substance, that the break occurred before the flasks touched the sand-heap.

In this state of the proofs, viewing the circumstances of the occurrence in connection with the evidence tending to show that the chain was an old one, worn to such an extent as to weaken it, and so much worn that an examination would have disclosed its condition, coupled with the absence of evidence thus far to show that any care had been taken by the employer with respect to its inspection or repair, we think there was enough evidence to go to the jury upon the question whether there had been a neglect of duty on the part of the employer. *Steamship Co.* v. *Ingebregsten,* 28 *Vroom* 400.

The cases of *Fenderson* v. *Atlantic Railroad Co.,* 27 *Vroom* 708, and *Baldwin* v. *Atlantic City Railroad Co.,* 35 *Id.* 232, are not at all parallel.

Nor should the plaintiff have been nonsuited for contributory negligence.   The insistment that there was such negligence on his part is based upon the theory that the disaster was caused by a collision with the heap of sand.   But there was at least a serious doubt upon the evidence whether it was so caused.

The contention that the occurrence was due to the negligence of a fellow-servant has no more substantial basis.   Those who were working with the plaintiff at the time are not shown to have been negligent.

And as to those who were charged with the duty of inspecting and repairing the chain, there being nothing to show that either of these duties had been imposed upon or assumed by the plaintiff and other workmen who were using the chain,

and nothing to show that such inspection or repair was incidental to its use, it followed that those who were charged with inspection and repairs were not fellow-servants engaged in a common employment with the plaintiff. *Smith* v. *Erie Railroad Co.,* 38 *Vroom* 636, and cases therein cited.

The defendant introduced evidence tending to show affirmatively that the chain was perfectly sound when first put into use; that it had been used but a short time; that the duty of inspection and repair had been fully performed, and the like. At the close of the case a motion was made to direct a verdict in favor of the defendant, and to the refusal of the trial judge to comply with this motion an exception was sealed. The bill of exceptions, however, does not show that any ground was assigned for the granting of the motion, and we have therefore not considered this exception. *Trade Insurance Co.* v. *Barracliff,* 16 *Vroom* 543; *Garretson* v. *Appleton,* 29 *Id.* 386; *Ottawa Tribe* v. *Munter,* 31 *Id.* 459.

Exception was taken to the refusal of the trial judge to permit the following question to be answered by an expert witness produced by the defendant, viz.: "Can you say from your experience as an expert whether a concern using a half-inch chain, subjected to a weight of 7,500 pounds, would be justified in using such a chain when it had been worn away to the extent of 1-16 of an inch?" This question encroached upon the province of both the court and the jury and was properly excluded.

Error is assigned on the ground that the trial judge charged the jury that the defendant was bound to make tests of the chain at reasonable intervals. But no exception was taken to that portion of the charge that is here referred to, and therefore we are not called upon to express an opinion upon the question whether, as matter of law, a duty to make tests rested upon the employer.

Certain exceptions that were taken to the charge disclose only proper comment on the testimony of certain witnesses, the court leaving it to the jury to say whether the inspection that one of the defendant's witnesses testified had in fact been made was sufficient if made. There was here no error.

We have now dealt with all the exceptions that were discussed upon the argument. Other exceptions we are not required to consider. *Roofing Co.* v. *Leather Co.,* 38 *Vroom* 566.

We have, however, examined the remaining exceptions, and find them unsubstantial.

No error appearing upon the record, the judgment will be affirmed.

*For affirmance*—THE CHANCELLOR, VAN SYCKEL, DIXON, GARRISON, FORT, GARRETSON, HENDRICKSON, PITNEY, BOGERT, VREDENBURGH, VOORHEES, VROOM. 12.

*For reversal*—None.