SUSAN T. LOID, ADMINISTRATRIX, DEFENDANT IN ERROR, v. J. S. ROGERS COMPANY, PLAINTIFF IN ERROR.

Submitted March 23, 1909—Decided June 14, 1909.

A carpenter was called from his work in a building in the course of erection and, with other workmen, directed by their foreman to straighten by hand the leaning top of a tall wooden derrick which had been placed near the center of the third story of the building, in order to hoist heavy timber up for the construction of the roof. Through failure to temporarily tie down by ropes, furnished there by the master, the feet of the derrick, before forcibly disturbing its balance upon the supporting plank, it fell and killed him.    On exception sealed to the trial court's refusal to nonsuit—*Held*—
(1) That the proper adjustment of this building appliance for its intended and effective operation was a component part of a carpenter's duty, in the performance of which the intestate and his fellows engaged as a part of their common employment, and that no actionable negligence chargeable to the master had been made to appear.
(2) That the foreman was a fellow-servant with the deceased and the other workmen and, under the facts proved by the plaintiff, the intestate, in the attempt to straighten the top of the derrick by pushing its unfastened feet with a force so great as to raise them up out of the notches in which they rested upon the plank, assumed an obvious risk sufficient in law to defeat plaintiff's recovery.

---

On error to Supreme Court.

For the plaintiff in error, *Edward Ambler Armstrong*.

For the defendant in error, *John W. Wescott*.

The opinion of the court was delivered by

VREDENBURGH, J.   This action is brought by the representative of a deceased employe against his employer to recover damages for the death of the employe, occasioned by the fall of a wooden hoisting derrick, which was in use in the construction of a building then in the course of erection by the intestate and others.   When it fell, a rope attached to its top, caught, or became entangled with his limbs, throwing him down from the third story to the ground.   The edifice under construction was a large structure known as "The Burlington County Insane Asylum."   This derrick had been in use previously upon different parts of the building, and had on the occasion in question been brought from a lower floor to the third floor and placed very near the center of the building, in order to hoist the heavy roof girders from a lower level into their proper position.   It was constructed of four upright timbers in the usual well-known shape of the letter A, fastened together, with a width apart at the bottom of about twelve feet, but narrowing towards the top, to which top ropes with blocks had been attached.   Its four timbers, or legs, rested upon planks about twelve inches wide by three inches in thickness, the plank being supported upon the floor joists of the building.   Around its four feet upon the plank, small wooden pieces or cleats had been nailed, so as to form notches or pockets in which its feet might rest, intended to prevent the derrick, while in its proper operation, from slipping or shifting from its footings.

Two guy ropes were fastened to the top; one is testified to have been also tied at its other end to the floor joists, and the other rope hung unfastened, and seems, from the evidence, to have been the rope which threw the intestate when the derrick fell down.   No structural defect, nor want of proper repair in this mechanism was either shown by the evidence or is claimed by the brief of counsel, filed in this court in support of the judgment below.

The intestate was a carpenter by trade, and was at the time of the accident employed and engaged as such in the construction of the asylum.   He was presumably educated in

his trade and familiar with the nature and operation of this well-known building appliance. On the occasion in question the evidence shows that he, together with (as one witness says from six to twelve, and another from eight to ten) other workmen also engaged in the construction of the building, were called by the foreman to assist in straightening the top of the derrick, which was then said to be "leaning too far over." They took hold of the uprights, as the principal witness expressed it, "as far up as they could reach" * * * about "six feet from the bottom," and pushed, and the "force of the pushing instead of raising it straighter just pushed the whole thing backwards," when * * * "the bottom slipped right out" and * * * "let the whole thing right over." * * * "When the plank slid that caused the feet to raise out of these notches and the whole thing went right over the wall; didn't nothing stay there but the plank."

It should be remarked at this point that the feet of the derrick were not designed to be stationary, nor to be nailed, nor fastened by nails either to the plank or to the floor joists in the building, because it was required to be often moved from place to place as occasion might demand, in its proper use of hoisting up heavy construction materials. At the first trial (the case has been twice tried) the absence of nails in the plank to prevent the feet of the derrick from slipping at the time of the accident was, in the opinion of this court, given undue weight in the charge of the trial judge to the jury—their verdict in regard to the liability of the defendant having been by the charge expressly directed to turn upon such circumstance. For this and other reasons not now material, the judgment in favor of the plaintiff below was reversed. See 39 Vroom 713. At this, the second trial of the cause now under review, the cross-examination of the plaintiff's witnesses has thrown new light upon the precise reason of the fall of the derrick, and has also furnished an explanation of the simple means (that of tying its feet down with the rope to the plank and floor joists) which, if it had been taken by the persons endeavoring to straighten the top, would obviously have preserved its center of gravity, and prevented its

fall. A few brief extracts from this testimony, transcribed in the form it was expressed by the witnesses, will present this important phase of the evidence more convincingly, I think, than mere conclusions of their effect drawn by me from the evidence, viz.:

"*Q*. If you had taken a turn around that plank and the joists with the rope that was there, it would probably have held it in place in your opinion, wouldn't it?

"*A*. It probably might have stayed there; yes, sir.

"*Q*. (To another witness.) The ends of this rope could have tied this plank to the joists so it would not have slid?

"*A*. It could if they had used it.

"*Q*. How did you think it (the derrick) ought to have been straightened, by pulling on the guy rope?

"*A*. It could have been by pulling on the guy rope, and the bottom ought to have been fastened before they undertook it. Those feet could have been chained to the girders * * * the ends of the rope could have tied this plank to the joist so it would not have slid * * * if they had used it."

At the close of the plaintiff's testimony, the trial court refused to grant defendant's motion for a nonsuit and in such action I think it erred.

Nothing showing, nor tending to show, any negligence on the part of the master had been disclosed by the plaintiff's evidence. Certainly and admittedly no omission by the master in the proper make-up of the mechanism, or which could have made it a more perfect tool in the performance of the work for which it was adapted and used in the building, had been proved.

But it is earnestly urged in the brief of the counsel for the defendant in error that the negligence of the master follows from evidence to the claimed effect that the deceased carpenter was not put in a "reasonably safe place" to do his work, and also that this was a jury question. There is certainly no place in the third story of a building without floors where it is reasonably safe for a carpenter to work if he be the least incautious. The slightest misstep even in walk-

ing upon the open floor joists may any moment precipitate him to the ground. Yet his duties oblige him to be there, and such and many other and greater risks every carpenter agrees by his calling and employment to undertake in consideration of the compensation he is to receive from his employer. The place in question, where the intestate stood at the time of the accident, was near the base of the derrick and was certainly reasonably safe until and unless he, or the others with him, did something to make it unsafe. What the above-quoted evidence shows they in fact did, was to push against the feet of the derrick in order to raise or straighten up its top, without first taking the simple precaution to secure, or tie down, the feet to the plank and joists on which they rested, and they pushed so hard that the feet were actually forced out of the pockets in which they stood, and the derrick quite naturally, in obedience to the laws of gravity, lost its equipoise and fell down. The place would have been as plainly unsafe to the deceased if, instead of the derrick, he and the others had attempted to raise the top of a long standing ladder by a force exerted at its feet, without first holding or securing them to the floor. No distinction in principle between such an act of imprudence and that which has been noted above is observable. This evidence was offered by the counsel himself, and seems to me to be decisive against him as to the fact that the place was rendered unsafe, not through any act of the master, but solely by the negligent act of the intestate and his fellow-workmen. There is additional reason, I think, why the court below should have denied to the plaintiff a right of recovery—the evidence has shown an assumption of the risk of the fall of the derrick by the deceased.

In the case of *McLaughlin* v. *Camden Iron Works,* reported in 31 *Vroom* 557, this court held that a laborer called from his special work and with others directed by their foreman to raise by hand a large frame, which, through lack of bracing or fastening, fell and injured him, could not establish a right of recovery against his employer because the plaintiff knew that the frame was being raised by hand and "assumed

such resultant risk of that method of doing the work as was obvious to him." The case at bar is a still stronger illustration of the principle there declared by this court. The deceased was not shown to have been called from any special work. The work of properly adjusting for use in the building the derrick was as much a part of his employment as were any of his other duties as a carpenter in the building. In the case just cited it appeared that there was on the premises, just as in the present case, an abundance, among other things, of ropes, and this court held and the opinion declares, as the result of numerous adjudications in this state (cited on page 559), the rule of law to be that "where appliances for work are needed, the duty is on the master to use reasonable care in their selection, and he cannot escape it by delegation; but carelessness in their use, or failure to use them on the part of his servant, whereby injury be received by a fellow-servant in the same common employment, is not chargeable to the master, no matter what may be the grade or authority of the servant."

I think that case should control in all respects the present, and that the foreman in the case in hand should be held to have been a fellow-servant with those who were engaged in the common effort of raising by hand the top of this derrick, and that his and their negligent failure to use proper appliances provided by the master, which would, if used, have prevented the derrick from falling, is not legally chargeable upon the latter.

The opinion in the recent decision of this court in the case of *Laragay* v. *East Jersey Pipe Company,* reported on *ante p.* 516, expressly approved *McLaughlin* v. *Camden Iron Works, supra,* and the important legal principles relating to the "fellow-servant" doctrine there laid down. It is true that case (the Laragay) held that the plaintiff was entitled to go to the jury upon the facts there presented—that whether or not the result of the fall of the "spile driver" (styled a "derrick" in the headnote) was so obvious that it ought to have been foreseen by the plaintiff was a question of fact that

should have been left to the jury. Yet the opinion takes pains to distinguish between the two decisions, and points out that the "fellow-servant rule" has no application where the duty is one that is owing by the master to his servants, but that McLaughlin was engaged in the erection of a frame that fell "because in the performance of *their* duty the servants did not make use of the materials the master had furnished," and declares that "judicial decisions made in cases where accidents have occurred *in the course of construction,* or in the so-called scaffolding cases, have no application."

This distinction has direct bearing upon the case at bar. The derrick here was essentially a carpenter's tool or instrumentality, actually in use in the construction of the building. It was supplied by the master as well for the carpenters' benefit as for his own. By its means the heavy timbers were to be lifted up to their proper locations in order that they might be adjusted and fastened by the carpenters in the roof. The derrick was therefore an efficient assistant to, if not a complete substitute for, a scaffold, and the case falls within the rule governing that subject. The fact that an injury happened to the carpenter from an accident through his negligent use of, or failure to use, the proper means which had been furnished him to straighten the derrick-tool for the construction of the work in which he was engaged, should afford him no greater right to damages against his employer than if he had accidentally cut his own hand in the negligent use of one of his employer's carpenter saws provided for him in his work. It follows that the direction of the foreman in charge, to the workmen to straighten the derrick, must be regarded in law as the act of a fellow-servant, and not that of the master. *Christiansen* v. *Cane Co.,* 46 *Vroom* 69. The abortive attempt of the workmen to move the top of the derrick without first securing its footing must be held to have been the assumption of an obvious risk by them for the consequences of which the master should not be held liable.

The judgment below should be reversed and a new trial awarded.

*For affirmance*—None.

