CHARLES S. HIRSCH, ALBERT HIRSCH AND HENRY WEILER, PARTNERS, &c., DEFENDANTS IN ERROR, v. THE C. W. LEATHERBEE LUMBER COMPANY, PLAINTIFF IN ERROR.

Submitted December 4, 1902—Decided June 8, 1903.

1. Where one has wrongfully converted the personal property of another to his own use, the injured party may, at his option, waive the tort, treat the tort-feasor as having purchased the goods in question without stipulation as to their price, and recover the market value of the goods upon the implied promise to pay so much as they were reasonably worth at the time of the conversion.

2. Where an unexecuted agreement has been made for the sale of goods, and the goods remain in possession of the vendor, one who buys from the vendee with notice that he has not paid his vendor for the goods is put upon inquiry to ascertain whether the first vendee is entitled to the goods without payment on delivery.

3. A sale for cash is a conditional sale; as between the parties, no title vests thereunder by delivery without payment, unless the delivery be made under such circumstances as to evince a waiver of the condition.

4. The recipient of a letter having been a non-resident of this state, and having died before the trial of the action, production of the original letter by the sender is excused, and secondary evidence of its contents is admissible if the original would have been admissible.

5. Our statute requiring conditional contracts of sale to be recorded (*Gen. Stat.*, *p.* 891, § 191) does not apply to a contract made between non-residents concerning personal property situate out of this state, the contract not contemplating the removal of the property into this state.

6. The Georgia statute for the recording of conditional contracts of sale—*Held*, not to apply to a sale on condition of payment of the price in cash on delivery.

On error to Hudson Circuit.

Before GUMMERE, CHIEF JUSTICE, and Justices VAN SYCKEL, FORT and PITNEY.

For the plaintiff in error, *James A. Gordon.*

For the defendants in error, *James B. Vredenburgh.*

The opinion of the court was delivered by

PITNEY, J. This is an action upon contract, in the nature of an action of *assumpsit,* brought to recover the market value of eight thousand four hundred and thirty-five railroad ties. Plaintiffs had judgment below. Reversal is sought for alleged trial errors.

Plaintiffs were wholesale lumber dealers, having their principal office in New York City. Defendant was in the same business, with headquarters at Boston. Both parties conducted a part of their business in Brunswick, Georgia, where they severally had wharves for the receipt, shipment and storage of ties and other lumber. One Allen was the plaintiffs' agent in Brunswick. The defendant's business there was in charge of a man named Johnson, and an assistant, named Hill.

The transactions that gave rise to the present controversy took place in December, 1900, and the following January. In the former month the plaintiffs had on hand at their wharf in Brunswick about forty thousand ties, among which were those in question. The latter were known as six by nine ties, eight feet long; some were sawn, some hewn.

During the month of December certain correspondence

took place between the plaintiffs in New York and a man named Danforth, then residing and doing business in Brunswick, resulting in an agreement for the sale of the eight thousand four hundred and thirty-five ties in question at the price of thirty-six cents each; terms, net cash on delivery; the ties to be taken on or before January 10th, and to be paid for on that date whether taken or not. There was some evidence tending to show a subsequent modification of the terms to this extent, that the plaintiffs were to be content with payment of eighty per cent. of the purchase-price on January 10th, if the ties were not taken on that date. Danforth agreed to purchase on these terms, but in the correspondence held himself out as acting for other parties not named. The arrangement was that the ties were to be loaded on board vessel from the plaintiffs' wharf. All these details were concluded by correspondence on or before December 24th. Nothing further of importance transpired until January 10th, the ties meanwhile remaining upon the plaintiffs' wharf. On the date just mentioned Danforth wired them, saying: "It makes great difference to us on account of insurance to pay to-day for ties. We feel confident that vessel arrives few days. Can you delay a short time on account of this fact. Ties for Leatherbee." On the same day Danforth wrote to the plaintiffs confirming this telegram, adding: "The C. W. Leatherbee Lumber Co.'s agent here, for whom I secured the ties, is willing and anxious to make payment whenever required, but has investigated the matter of insurance and I have wired you as above. It is only a matter of a few days to you, as the sale is a *bona fide* one, and the insurance question is the only stumbling-block."

On the 11th the plaintiffs answered Danforth's telegram by wire and letter, stating in effect that the ties were covered by a policy held by plaintiffs, under which Danforth could collect in case of loss, and requesting him to pay the Brunswick office for the ties.

According to the testimony of the plaintiffs' agent, Allen, who was called as a witness in their behalf, a conversation took place in Brunswick on January 12th between him and

Johnson, the defendant's agent, in which Allen mentioned that he had been advised by Danforth, and had gathered from what Danforth had written to the New York office, that Danforth was negotiating for the ties for the Leatherbee Lumber Company, and that the ties were to be theirs. Allen therefore called upon Johnson for eighty per cent. of the value of the ties, the terms of the sale being (as he said) net cash on delivery, or eighty per cent. of the value of the ties, on January 10th, if not delivered. Allen also testified that Johnson told him he would give him a check in the name of the C. W. Leatherbee Lumber Company; that an estimate was made between them as to the amount to be thus paid, but that the check was not given because of the absence of Danforth, whose presence at the settlement both agents seem to have considered essential by reason of his interest in the transaction. The payment in question was therefore deferred and was not at any time made.

On January 13th the vessel on which it was intended to ship the ties arrived off the plaintiffs' wharf. Allen testified that he and Johnson boarded her together on that day and endeavored to make an arrangement about giving her a berth at the dock, but by reason of some difficulty in doing this the captain took his vessel to the wharf used by the defendant. An arrangement was subsequently made between Allen and Johnson for the transfer of the ties by rail from the plaintiffs' wharf to that of the defendant, and this was done between the 18th and the 23d, the ties being at the same time loaded upon the vessel.

Allen testified that on the 24th, at defendant's wharf, he requested Johnson to make payment for the ties, and that Johnson refused to settle, in the absence of Danforth. At the same time Allen left with Johnson a bill made out in the name of the plaintiffs against Danforth for the eight thousand four hundred and thirty-five ties, at thirty-six cents each, amounting to $3,036.60. At this interview, as Allen testifies, Johnson told him that he himself expected to be away from home and that his assistant, Hill, was authorized to make payment for the ties in his absence. Allen says that

on the 26th he called again at defendant's office and found Hill there, Johnson being absent; that he asked Hill if he had paid Danforth for the ties, and Hill said he had not, but expected to do so later in the day, and that he (Allen) thereupon notified Hill not to pay Danforth, saying in substance that the ties were not to pass out of plaintiffs' possession until paid for, and that they remained the property of the plaintiffs even though the vessel had gone to sea. He testifies that the vessel went to sea late in the afternoon of the 24th or early in the morning of the 25th.

The correspondence between the plaintiffs and Danforth was not introduced by the plaintiffs as a part of their principal case. They rested after introducing Allen's testimony to the effect that the ties were the property of the plaintiffs; that they were delivered to the defendant under the circumstances just recounted, and that they were sent to sea in a vessel controlled by the defendant, together with evidence of the market value of the ties at the time of delivery. Defendant moved for a nonsuit, on the theory that the evidence did not show a conversion, and that by rendering a bill made out in the name of Danforth after the ties had been delivered to the defendant, the plaintiffs had waived their rights as against the defendant. This motion was properly refused, even as the case then stood. There was evidence from which the jury would have been justified in finding, either that the ties were sold and delivered by the plaintiffs to the defendant (Danforth's purchase not having as yet clearly appeared), or that the ties had been wrongfully converted by the defendant. Upon the theory of conversion, the plaintiffs were entitled to waive the tort and recover the market value of the property in an action of *assumpsit.* If one who has *rightfully* converted the personal property of another to his own use is held bound by an implied promise to pay to the owner its reasonable value, certainly he who has *wrongfully* converted such property must be held to the same implied undertaking. To permit him to deny the promise would enable him to take advantage of his own wrong. The tortfeasor, in such circumstances, may, at the option of the party

injured, be treated as having purchased the goods in question without stipulation as to their price, and be held ·liable in *assumpsit* for their market value. *Moore* v. *Richardson,* 39 *Vroom* 305.

Shipment of the ties upon a vessel bound to sea was sufficient evidence to go to the jury upon the question of conversion.

The making out of a bill in the name of Danforth was not a conclusive circumstance, and, at most, raised a question for the jury as to its effect under the other circumstances of the case.

The defendant introduced evidence tending to show that Danforth in purchasing the ties from plaintiffs was not acting as agent for defendant, but that defendant had purchased the ties from Danforth at some time between December 15th and January 1st, and that its agent, Johnson, paid Danforth for them, in full, on the 26th of January, after ·the sailing of the vessel. Both Johnson and Hill were called as witnesses. Johnson asserted that the ties were delivered to the defendant by Danforth, but this was a mere assertion of a conclusion unsupported by fact, for he confirmed the plaintiffs' evidence to the effect that the property was in plaintiffs' possession at the time he purchased them from Danforth; that the delivery was made directly from the plaintiffs' wharf to that of the defendant through the instrumentality of Allen, and that prior to this delivery he (Johnson) had arranged to make an advance to the plaintiffs on account of the ties. He testified that at the time this arrangement was made he believed the ties were insured in the name of the plaintiffs, and that he knew the plaintiffs had not been paid for them. He denied that he had promised to pay to the plaintiffs the purchase-price for the ties in full. Hill's testimony was confirmatory upon the question of the proposed advance. He denied that Allen notified him not to pay Danforth. Defendant also introduced in evidence certain of the letters written by the plaintiffs to Danforth, tending to show a purchase of the ties by the latter from the plaintiffs.

In rebuttal, the plaintiffs introduced the remainder of the correspondence already mentioned.

Upon the close of the whole case these facts remained proven beyond dispute: *First,* that the plaintiffs were owners and in possession at least until the ties were placed upon defendant's wharf; *secondly,* that Danforth's only title was expressly subject to payment of the price in cash upon delivery; *thirdly,* that defendant claimed title by purchase from Danforth, who at no time had possession, the defendant having full notice that Danforth claimed by purchase from the plaintiffs, and that he had not paid the purchase-price. The only material point open to controversy, under the evidence, was whether the ties were delivered to defendant's wharf under such circumstances as to evidence a waiver by the plaintiffs of the payment of cash on delivery.

In this state of the proofs it is obvious that the defendant's motion for direction of a verdict was properly refused. There was still remaining, we think, a fair question for the jury to determine, whether the sale as carried out was not in fact a sale made by the plaintiffs to the defendant through Danforth as a middleman. Viewing the transaction in this light, the question whether payment on delivery was waived was, of course, immaterial, for the present action is the appropriate mode of recovering the price of the goods. Treating the sale (as the trial judge treated it) as made by the plaintiffs to Danforth for his own account, and the delivery as made to the defendant as his nominee, the question whether the delivery was unconditional was in dispute.

A sale for cash is a conditional sale. As between the parties, no title vests thereunder by delivery without payment unless the delivery be made under such circumstances as to evince a waiver of the condition. *Cole* v. *Berry,* 13 *Vroom* 308, 310.

In the cases of *Heller* v. *Elliott,* 16 *Vroom* 564; *Marvin Safe Co.* v. *Norton,* 19 *Id.* 410; *Leatherbury* v. *Connor,* 25 *Id.* 172, and *Campbell Manufacturing Co.* v. *Rockaway Publishing Co.,* 27 *Id.* 676, delivery had been made to the original vendees; the controversies related to the rights of third

parties purchasing from a vendee in possession. The reasoning of those cases is applicable here only so far as it relates to the rights of the original parties.

Danforth not having been invested with possession of other *indicia* of title, and the defendant having notice of facts sufficient to at least put it upon inquiry as to plaintiffs' rights, the evidence did not present the case of a third party purchasing goods from one to whom delivery has been made under a conditional contract of sale. Unless the delivery to defendant as his nominee was made in such manner as to show a waiver of the condition, the defendant was in the position of a mere assignee of a chose in action, and simply succeeded to Danforth's right to have the goods on performance of the condition. The claim that cash payment was waived by the delivery of the ties at defendant's wharf rests upon a very slender foundation. Defendant's witness Johnson himself testified (and there was no evidence to the contrary) that, by the custom of the trade, a sale of ties for "cash on delivery" meant that payment could not be exacted until the ties had been loaded on vessel or cars and a bill of lading issued. Upon the whole case the utmost that defendant was entitled to was to have the question of waiver submitted to the jury; and this was done.

It remains to discuss the exceptions taken to rulings on matters of evidence and to the instructions of the trial judge to the jury.

The judge admitted in evidence, over defendant's objection, a letter-press copy of a letter from the plaintiffs to Danforth, dated December 12th, forming a part of the correspondence already mentioned. The objection was that there was no evidence to show that any such letter was received by Danforth, and that secondary evidence was not admissible. Danforth had lived in Georgia; he died some time before the trial. This was sufficient to excuse production of the original letter. The writing of the letter of December 12th was proved, but its mailing was not clearly proved. It was testified, however, by one of the plaintiffs, that a letter had been received from Danforth acknowledging receipt of the letter of December

12th.   The letter of acknowledgment is not in evidence, but no objection was made to the secondary evidence of its contents.   Accepting the fact that Danforth acknowledged receipt of the letter of December 12th by letter, it was fair to assume that the acknowledgment was written in the course of the correspondence that resulted in the sale of the ties to Danforth.   As defendant claimed title under Danforth, this rendered the fact of his acknowledgment evidential against the defendant, and rendered admissible the letter of the 12th when proven.   The letter-press copy was therefore properly admitted.   Even were there error in admitting it, the error was quite harmless, as the letter in question was not at all essential to the plaintiffs' case.   It related solely to the terms of Danforth's proposed purchase, which were clearly proved by other documentary evidence to which no exception was taken; and the terms of the purchase were not disputed.

The trial judge admitted in evidence, over objection, a letter written December 13th, by the plaintiffs to their agent Allen, advising him of the terms of their sale to Danforth, which at that time they supposed to be finally closed as the result of certain telegrams that passed between them and Danforth on that day, after considerable previous correspondence that rendered the references easily intelligible by the parties. They wired him, saying, "Cannot sell the hewn ties without the sawn."  He replied, "All sawn and hewn accepted per your offer."   They answered, "Will instruct Allen to deliver ties, terms strictly net cash."   The letter to Allen was sent in pursuance of this telegram.

If Danforth had made his purchase from Allen as plaintiffs' agent acting under general authority, there would be force in defendant's insistment that this letter was "hearsay and immaterial."   But as Danforth's purchase was made directly from the plaintiffs, under circumstances that necessitated instructions to their agent respecting the terms of delivery, and as their telegram notified Danforth that Allen's authority to make delivery would be specially communicated to him, the authority of Allen arose out of those instructions, and not out of his usual employment.   The letter of authority

was therefore admissible as a part of the evidence of Danforth's title, and also as throwing light upon the fact of delivery as distinguished from the fact of purchase. In any aspect, its admission did no harm to the defendant, as the letter was only cumulative evidence upon points that otherwise appeared in evidence beyond dispute.

Exception was taken to the ruling of the trial judge in permitting Allen to testify that the notice not to pay Danforth, which he said he gave to Hill on January 26th, was given by advice of an attorney-at-law. The objection—that this was hearsay—was apparently well taken. But it is impossible to see how this evidence can have done any harm. The fact of giving the notice was material; but it was of no sort of consequence by whose advice it was given, and the jury cannot have been misled by the hearsay evidence.

Three exceptions relate to passages in the judge's charge, to the effect that a sale for cash is a conditional sale, and that the property will not pass until the condition be fulfilled, even though the goods may have been actually delivered into the possession of the buyer. The objection is not to this statement of the law, but to the omission of the judge to qualify it by expounding the law as to the rights of innocent third parties becoming interested after the delivery. There was no request for specific instructions upon this point; doubtless because it could not be pretended, in view of all the circumstances, that the defendant was an innocent purchaser from Danforth as a party in possession. There being no evidence that Danforth ever had possession, the trial judge is certainly not to be blamed for omitting to theorize upon the rights of *bona fide* purchasers.

Two exceptions relate to the instructions of the trial judge to the jury with respect to the measure of damages. One of these exceptions is so broad as to be valueless; for it includes the indubitable proposition (charged pursuant to defendant's request), that the value of the goods at the time in question should be the measure of damages, as well as a certain allusion to the testimony, of which complaint is now made. The limitation of the recovery to the market value of the ties was

favorable to the defendant, and perhaps was necessary under the evidence. For while there was some evidence tending to show a sale by plaintiffs to defendant, either through Danforth's agency or that of Allen, there was no clear evidence that defendant had agreed to pay the plaintiffs a fixed price. Therefore, whether on the theory of a sale by plaintiffs to defendant, or on the theory apparently adopted by the parties at the trial, and certainly adopted by the judge, that a recovery must be rested upon a conversion of the ties by the defendant, in either case market value was the proper measure of damages. Moreover, that basis was adopted at defendant's request.

Mere comments by the trial judge upon testimony are not assignable for error. *Bruch* v. *Carter,* 3 *Vroom* 554; *Castner* v. *Sliker,* 4 *Id.* 95, 507; *Delaware, Lackawanna and Western Railroad Co.* v. *Toffey,* 9 *Id.* 525, 530; *Engle* v. *State,* 21 *Id.* 272.

But complaint is made concerning another portion of the charge, in which the judge said: "You will take the testimony, the sale by the one party and the sale by the other party, and get at the value of these ties." The reference is to the price of thirty-six cents each, as agreed upon between the plaintiffs and Danforth, and the lesser price at which Danforth agreed to sell them to the defendant. If it be objected that neither sale was consummated, according to the evidence, and so neither contract was evidential upon the question of market value, the answer is that the allusion in any aspect was harmless. Aside from these so-called sales, the only evidence of market value was the testimony of Allen and that of Johnson. The former testified to a value that agreed with the price Danforth agreed to pay to the plaintiffs, while Johnson swore that the market value was the same as the price fixed in defendant's contract with Danforth. The judge, therefore, in referring to the two sales, in effect, directed the minds of the jury to the evidence on both sides concerning actual market value. The charge is distinguishable from that given in *Moore* v. *Richardson,* 39 *Vroom* 305.

Exception was taken to this portion of the charge: "If the defendant had knowledge that Danforth had not paid for the ties, it was put upon notice to inquire what were the terms of the contract of sale between Danforth and the plaintiffs; if it did not so inquire, upon it must fall the loss." Blackstone says (2 *Bl. Com.* 447) : "It is no sale without payment, unless the contrary be expressly agreed." In 1 *Benj. Sales* (*Corbin's ed.*), 338, it is said: "It must not be inferred that, in the absence of any condition in the contract of sale, the buyer can take the property vested in him without payment." In 2 *Kent Com.* (13th ed.) *497, it is said: "Where no time is agreed on for payment, it is understood to be a cash sale, and the payment and the delivery are immediate concurrent acts, and the vendor may refuse to deliver without payment, and if payment be not immediately made the contract becomes void." See, also, 21 *Am. & Eng. Encycl. L.* (1st ed., tit. "*Sales*") 565, and cases cited.

It results that where an unexecuted agreement has been made for the sale of goods (as, in this instance, between the plaintiffs and Danforth), and the goods remain in the possession of the vendor, one who buys from the vendee, with knowledge that he has not paid his vendor for the goods, is put upon inquiry to ascertain whether the first vendee is, by the terms of his purchase, entitled to the goods without payment on delivery. As already remarked, the second purchaser in such a situation acquires but a chose in action, and merely succeeds to the rights to which his assignor was entitled. In view of the undisputed facts of this case, that portion of the charge just referred to was fully justified.

The final exception is to the refusal of the trial judge to charge four propositions requested by the defendant. Only one of these propositions has been defended in the argument. Even if the generality of the exception be not sufficient to defeat it, the exception will be considered as waived, except with respect to the single proposition that has been discussed (*Hopwood* v. *Benjamin Atha & Illingworth Co.*, 39 *Vroom* 707), which is this: "That if the sale by the plaintiffs to

Danforth was a conditional sale, the contract, not having been recorded, is void as to *bona fide* purchasers."

The property not having been within this state, all the parties having been resident elsewhere, and the contract not having contemplated the removal of the property to this state, our statute (*Gen. Stat.*, p. 891, § 191), of course, does not apply. *Knowles Loom Works* v. *Vacher*, 28 *Vroom* 490; *Wooley* v. *Geneva Wagon Co.*, 30 *Id.* 278.

We are referred to a Georgia statute, which, however, was not proved in evidence. Assuming it to be as reported in *Cohen* v. *Candler*, 79 *Ga.* 428, and *Mann* v. *Thompson*, 86 *Id.* 347, the law is as follows: "Whenever personal property is sold and delivered, with the condition affixed to the sale that the title thereto is to remain in the vendor of such property until the purchase-price thereof shall have been paid, every such conditional sale, in order for the reservation of title to be valid as against third parties, shall be evidenced in writing and not otherwise. And the written contract of every such conditional sale shall be executed, attested and recorded in the same manner as mortgages on personal property. Conditional sales not so recorded are valid between the parties, but operate as absolute sales as against all other liens created or obtained or purchases made prior to the record."

The mere recital of this statute shows the absurdity of attempting to construe it as applicable to a sale upon condition of payment of the purchase-price in cash upon delivery. It refers only to contracts that contemplate a continued possession by the vendee, subject to a reservation of title by the vendor.

No prejudicial error appearing in the record, the judgment under review should be affirmed.