**UNITED STATES of America,**
**Appellee,**

v.

**Arnold E. VANDERSEE, Appellant.**

**No. 12994.**

United States Court of Appeals
Third Circuit.

Argued April 5, 1960.

Decided May 27, 1960.

Rehearing Denied July 6, 1960.

Robert D. Corbin, Jersey City, N. J., for appellant.

Jerome D. Schwitzer, Asst. U. S. Atty., Newark, N. J. Chester A. Weidenburner,

U. S. Atty., Jerome D. Schwitzer, Raymond W. Young, Asst. U. S. Attys., Newark, N. J., for appellee.

Before McLAUGHLIN, STALEY, and FORMAN, Circuit Judges.

McLAUGHLIN, Circuit Judge.

The defendant appeals from conviction under an indictment charging him with devising and employing a fraudulent scheme in violation of the Securities Act, 15 U.S.C. § 77q(a) (1), and for use of the mails in furtherance thereof (18 U.S.C. § 1341).

The indictment originally contained fifteen counts each of which named a different person or persons against whom the defendant's acts were directed. Four of the counts were dismissed by the court. The defendant was found guilty by the jury on the remaining eleven. He was sentenced to five years imprisonment with a fine of $5,000 on the first count and three years imprisonment on each of the remaining ten counts to run concurrently with each other but consecutively to the sentence imposed on the first count.

Vandersee had developed a type of metallizing machine. He claims his troubles came about from his efforts to obtain necessary financing for the commercial production of the machine.

Appellant came upon the business scene in 1946 when he organized the Vande Manufacturing Company in Chicago for the ostensible purpose of manufacturing and selling his metallizing "gun". One Harry Dieringer testified he invested between $45,000 and $50,000 in the company. In 1948 this promotional attempt was dropped after only six guns were assembled, none of which were sold. In 1951 appellant organized the Vandersee Engineering Company, Inc. under the laws of Delaware and operated out of Texas. Three Texas investors testified to investments totalling $8,850. Not a single gun was produced.

Appellant subsequently created a Puerto Rican subsidiary of the corporation, with the cost of same borne in part by two Texas investors and again no guns were produced. Nineteen fifty-three found the appellant establishing his promotion in Los Angeles with the Vandersee Engineering Company, a Nevada corporation, which never commenced operations. However, newspaper advertisements and personal solicitations brought appellant investments totalling $17,500 and a conviction of violating California's labor laws. Vandersee prudently departed from California and upon reaching New Jersey organized the Vandersee Corporation.

As a result of advertisements in The New York Times, four investors, Carl Nelson, Glen Matter, David D. Gill and Henry J. Mason, turned over $12,000 to appellant and in return were made officers and directors of Vandersee Corporation. During the two year existence of this corporation, until it was closed down by order of the Attorney General of New Jersey, it moved its plant and offices from Hillside to Union, New Jersey, employed between forty and fifty people for the purpose of selling stock and gave demonstrations of the metallizing gun. Despite this activity, Vandersee Corporation managed to produce only five or six guns.

In February, 1955 notwithstanding assurances that he would form a voting trust in order to give the directors an equal voice in management, he removed the four other directors and assumed full control of the corporation. During the two years, extensive newspaper and radio advertising and mail solicitation produced investments totalling approximately $301,872.

The first point presented on behalf of appellant is that the evidence clearly showed he lacked a criminal intent and therefore the trial court should have "allowed the motion for acquittal either on the conclusion of the government's presentation or after all the evidence had been heard." It is very thoroughly argued by able court assigned counsel that

there was no substantial evidence of guilt.

■■ Intent of course is an essential element of the crimes charged and is ultimately a question of fact for the jury. The question here is of the substantiality of the evidence upon which the jury's finding was based. Fraudulent intent, although a subjective state of mind, can be inferred by means of objective standards. In Aiken v. United States, 4 Cir., 1939, 108 F.2d 182, 183 it was stated:

> "Fraudulent intent, as a mental element of crime, * * * is too often difficult to prove by direct and convincing evidence. In many cases it must be inferred from a series of seemingly isolated acts and instances which have been rather aptly designated as badges of fraud. When these are sufficiently numerous they may in their totality properly justify an inference of a fraudulent intent; and this is true even though each act or instance, standing by itself, may seem rather unimportant." See also Holmes v. United States, 8 Cir., 1943, 134 F.2d 125, 134; Nassan v. United States, 4 Cir., 1942, 126 F.2d 613.

We shall enumerate only a few of the more flagrant "badges of fraud" of this much decorated defendant. A letter to the stockholders dated May 15, 1956 begins "During the past two months your company had made considerable advancement in the marketing of its products" and later proclaims "We have just completed preliminary negotiations with the Bell Telephone Laboratories * * * to conduct an extensive series of experimental tests * * *." Actually at this time no products had been marketed and the extensive series of tests was nothing more than a single experimental spraying of a cable at a cost not to exceed $500.

In October 1955, Vandersee wrote the stockholders, urging them to buy additional stock, stating "we of Vandersee Corporation are proud to proclaim that our company has emerged from the period of research and development, on our first Vanco product, to that of volume production and sales distribution." The letter continues "We have completed retail distribution in certain areas in the United States and others are presently being negotiated. Foreign distribution is being arranged in Sweden, Holland and Venezuela." In light of the facts that nothing was being produced, nothing was being sold and the only corporate activity was the sale of stock, the above can hardly be passed off as a mere exaggeration of existing conditions.

Another letter to the stockholders on February 6, 1956 announced a dividend had accrued and another was being considered, and that the price of stock advanced from $1.25 to $2.00 "and another advance will follow." The financial records provided no basis for these assertions.

This same line of gross misrepresentation was followed in brochures, radio and newspaper advertisements. As it was put in Aiken v. United States, supra 108 F.2d at page 184:

> "Caution and conservatism are not usually characteristics of the corporate prospectus. But defendant here went even beyond what has now come to be known as high-pressure. For many of the statements so glowingly set forth, defendant, in the light of his knowledge about the real situation, knew there was little or no foundation in fact. The same observation is equally true as to the letters written by the defendant to those who had subscribed for stock in the corporation."

■ The evidence of fraudulent intent adduced by the government was substantial. The only rebuttal was defendant's testimony that he had no such intent. This the jury declined to credit.

During the course of his testimony Vandersee stated that he had made a formal withdrawal from the Securities and Exchange Commission (Commission) of an application to permit the selling of securities outside of New Jersey. The government, for the purpose of

impeachment was permitted to introduce an order of the Commission, prior in time to the withdrawal letter, temporarily denying Vanderee's application. The order contained the following reason for the denial:

"The Commission having reasonable cause to believe:

\* \* \* \* \*

"C. A device, scheme or artifice to defraud is being employed in connection with the sale of the securities \* \* \*."

■■ Because the order was introduced solely for the purpose of refuting Vandersee's attempted show of innocence with reference to his application, defendant's claim that the order was "immaterial, irrelevant and incompetent" is without merit. So too, defendant's objection that since Vandersee acknowledged receipt of the order, the document itself should not have been admitted. It is within the discretion of the trial court whether or not to admit a document even though the facts which it tends to prove may have been admitted.

■ A more serious question is posed by defendant's contention that admission of the Commission's order was highly prejudicial and resulted in substituting an ex parte opinion of a governmental agency for the opinion of the jury. But the order was admissible for the purpose of impeachment and that it may be inadmissible for other purposes or that it may incidentally be prejudicial does not thereby render it inadmissible for all purposes. 20 Am.Jur. § 263, p. 252; Wigmore, Evidence § 13, p. 300 (3 ed. 1940). In such instances an instruction by the court to the jury will suffice to limit the evidence to the immediate issue upon which it bears. 53 Am.Jur. § 670, p. 515; Wigmore, Evidence § 13, p. 301, (3 ed. 1940). The trial judge at the time the evidence was admitted and again in his charge clearly directed the jury to limit the order's use to the contradiction of Vandersee's testimony. On appeal, it is presumed that the jury heeded this instruction, Atchison, T. & S. F. R. Co. v. Andrews, 10 Cir., 1954, 211 F.2d 264, 267; Loew's, Inc. v. Cinema Amusements, Inc., 10 Cir., 1954, 210 F. 2d 86, 91, certiorari denied, 347 U.S. 976, 74 S.Ct. 787, 98 L.Ed. 1115, particularly where, as here, there is other competent and persuasive evidence upon which a verdict of guilty could be based. Defendant's argument that, rather than cure the defect, the court's instructions drew further attention to the prejudicial part of the order while ingenious cannot be reasonably accepted. The admission of the evidence was not reversible error.

Defendant alleges error in the admission into evidence, over defense objection, of a carbon copy of a letter signed by Vandersee and mailed to a Mr. Chalmers in Austin, Texas urging him to undertake the sale of Vandersee's securities in New Jersey. In this letter were paragraphs mentioning that "The State of New Jersey does not have any 'blue sky laws' governing the sale of securities \* \* \* " and "if you and your group are looking for something to sell and a place to sell it with the least interference \* \* \* New Jersey is the state in which you and your group can earn unlimited amounts of money through the sale of securities."

■ Vandersee's contention that the letter is irrelevant can be dismissed forthwith. The pertinent paragrahs indicate knowledge and design, both objective standards from which intent may be inferred. State v. Costa, 1953, 11 N.J. 239, 246, 247, 94 A.2d 303; see Wigmore, Evidence § 242 (3 ed. 1940).

■ Defendant further insists that the admission of the letter violated the "Best Evidence" rule in that it was a copy and that there was no showing that the original was unobtainable. The district court admitted the copy as a record made in the regular course of business, 28 U.S.C. § 1732(a) which is not subject to the best evidence rule, United States v. Kimmel, 2 Cir., 1960, 274 F.2d 54. Defendant counters with the assertion that this was improper since there is no proof the letter was mailed. Vandersee's secretary testified that Vandersee

dictated the letter to her, that she typed it and, as was customary with each letter sent out, placed a copy in the files. She testified that "it should have been sent out." There is a presumption that this letter prepared in the customary manner of the business was mailed. As the defendant offered no proof to rebut the presumption his contention of irregularity must fall.

Aside from the above, the copy was admissible despite, or perhaps within, the rule of the best evidence. The reasons for the rule preferring an original document to a copy are "As between a supposed literal copy and the original, the copy is always liable to errors on the part of the copyist * * * [and] the original may contain, and the copy will lack, such features of handwriting, paper and the like * * *." Wigmore, Evidence § 1179, p. 318. These considerations tend to disappear when a typed carbon copy is involved. Vandersee readily admitted composing the letter and did not dispute the contents. Wigmore proposes a rule that "Production of the original may be dispensed with, in the trial court's discretion, whenever in the case in hand the opponent does not bona fide dispute the contents of the document and no other useful purpose will be served by requiring production." Wigmore, Evidence § 1191. The signature on an original typewritten letter is always subject to disavowment by the alleged sender necessitating independent identification. There is no reason why a typed original should be accorded a higher degree of authenticity than an exact duplicate, minus a signature, the composition and contents of which are unchallenged by the writer.

Finally, the defendant contends the copy should not have been admitted without a showing, on the part of the government, that an attempt was made to obtain the original. This is disposed of under the above rule. Further, the rule in New Jersey appears to be that non-production of the original is excused without such a showing if the letter is in the possession of a third person outside the jurisdiction. Sansone v. Selvaggi, 1938, 121 N.J.L. 274, 2 A.2d 355; Hirsch v. C. W. Leatherbee Lumber Co., 1903, 69 N.J.L. 509, 516, 55 A. 645; Wigmore, Evidence § 1213, p. 389.

The evidence was sufficient to show a criminal intent. The district judge did not commit reversible error in admitting the evidence disputed here on appeal. In a long exhausting trial he gave the defendant every fair consideration. The judgment of the district court will be affirmed.