

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-1-2009

# USA v. Brenda Rickard

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-3163

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"USA v. Brenda Rickard" (2009). *2009 Decisions.* Paper 1088.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1088

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 08-3163

UNITED STATES OF AMERICA

v.

BRENDA RICKARD,
                                            Appellant

No. 08-3179

UNITED STATES OF AMERICA

v.

JAMILA DAVIS,
a/k/a JAMILA BAKER

JAMILA DAVIS,
                                            Appellant

On Appeal from the United States District Court
for the District Court of New Jersey
District Court Nos. 2-05-cr-00482-001 & 2-05-cr-00482-002
District Judge: The Honorable Jose L. Linares

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 25, 2009

1

Before: BARRY, SMITH, *Circuit Judges* and DuBOIS, *District Judge**

(Filed: July 1, 2009)

---

OPINION

---

SMITH, *Circuit Judge.*

Appellants Brenda Rickard and Jamila Davis were convicted of charges stemming from their participation in a conspiracy to fraudulently obtain inflated mortgage loans from banks in connection with the purchase of eight residential properties in Northern New Jersey. From the scheme, Rickard and Davis allegedly procured approximately $2.25 million and $3.5 million, respectively. After a joint trial, a jury convicted Rickard and Davis each of one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371, and seven counts of bank fraud, in violation of 18 U.S.C. §§ 1344 and 2. The District Court sentenced Rickard to a 121-month term of imprisonment, sentenced Davis to a 151-month term of imprisonment, and ordered each to pay $12,487,227.51 in restitution. Rickard and Davis now appeal their convictions and sentences.[1] Since we conclude that there is no merit to any of their arguments, we will affirm.

I.

Rickard claims that the District Court committed five errors: 1) it abused its

---

*The Honorable Jan E. DuBois, Senior District Judge for the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

[1]The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

discretion by failing to sever her trial from Davis'; 2) it abused its discretion by not granting her a new trial based on the weight of the evidence presented; 3) it abused its discretion by permitting an alleged co-conspirator to testify about his prior dealings with Rickard; 4) it abused its discretion by instructing the jury on the concept of willful blindness; and 5) it erred in assigning Rickard a four-level sentencing enhancement for being a leader or an organizer.

## A.

Rickard claims that the District Court should have severed her trial from Davis' because the "overwhelming" evidence against Davis caused Rickard prejudice, and Davis' defense theory was at odds with Rickard's own. Neither of these assertions is persuasive.

Even if we accept Rickard's view that the evidence against Davis was more damaging than the evidence against Rickard, Rickard is not entitled to a separate trial. *United States v. Urban*, 404 F.3d 754, 776 (3d Cir. 2005) ("[A] defendant is not entitled to severance merely because the evidence against a co-defendant is more damaging than that against him." (internal quotations and citation omitted)). Instead, "[t]he inquiry is whether the jury can reasonably be expected to compartmentalize the evidence against each defendant." *United States v. McGlory*, 968 F.2d 309, 340 (3d Cir. 1992). Based on our review of the record, we believe that the jury was capable of doing so. Indeed, the Government introduced ample evidence that Rickard and Davis performed distinct roles in the scheme to defraud: Davis identified target properties, recruited "straw" purchasers, and procured false documentation to support the loan amounts, while Rickard handled the

closing, including preparing closing documents containing false information.[2]

Nor do we perceive any inherent conflicts in Rickard's and Davis' respective defenses. The two merely asserted separate theories: Davis argued that the misrepresentations made to the banks were immaterial and that she had no intent to defraud the banks, while Rickard claimed that she had no knowledge that any misrepresentations were made at all. Therefore, the District Court did not err in refusing to sever Rickard's trial from Davis' trial. *See Urban*, 404 F.3d at 775 ("Defendants seeking to sever bear a heavy burden, and must demonstrate not only abuse of discretion in denying severance, but also that the denial of severance would lead to clear and substantial prejudice resulting in a manifestly unfair trial." (internal quotations and citations omitted)).

## B.

Rickard asserts that the jury's guilty verdicts were contrary to the weight of the evidence. In her post-trial motion pursuant to Federal Rule of Criminal Procedure 33, however, she did not raise this claim. The Government argues that this renders her challenge waived. We agree. *See United States v. Grubbs*, 506 F.3d 434, 443 (6th Cir. 2007) (concluding that the defendant "has waived the argument that he is entitled to a new trial based on the verdict being against the weight of the evidence, because he did not present this argument to the district court").

---

[2]We will detail the evidence against Rickard in our discussion of her claim that the jury's verdict was contrary to the weight of the evidence. As for Davis, we will discuss the evidence of her guilt when we address her challenge to the sufficiency of the evidence.

Even assuming that it was not waived, we do not believe that a District Court would have abused its discretion in denying Rickard's motion for a new trial.[3] The evidence introduced at trial established that 1) Rickard handled all the closings for the homes purchased as part of the scheme; 2) Rickard provided the victim banks with HUD-1 settlement forms that contained an inflated sale price, and provided the sellers with HUD-1 forms that bore the correct sale price; 3) Rickard was responsible for personally preparing all of the HUD-1 forms; 4) Rickard directed the distribution of the proceeds from the completed home sales, which included doling out funds to her alleged co-conspirators; 5) for her participation in each transaction, Rickard received much more money than the three percent of the property's actual purchase price that she was due; and 6) Rickard paid the attorney she used to conduct the closings an extra $80,000 and gave him a new automobile, even though his fee was listed at $1,100 per closing. One of Rickard's alleged co-conspirators also testified that when he asked Rickard "how -- can we get in trouble for this," Rickard responded by explaining that "the only thing that is not covered is that the deed that [Rickard] submits back to the bank with the closing package would have the actual price, which is lower than what that bank loaned us. So if they spotted that, there is a huge problem." (S.A. 186.) Based on this record, we see no basis upon which to justify disturbing the jury's guilty verdicts. *See United States v. Davis*, 397 F.3d 173, 181 (3d Cir. 2005) ("[A] district court can order a new trial on the ground that the jury's verdict is contrary to the weight of the evidence only if it believes

---

[3]"We review a district court's denial of a motion for a new trial pursuant to Rule 33 for abuse of discretion." *United States v. Jasin*, 280 F.3d 355, 360 (3d Cir. 2002).

that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted." (internal quotations and citation omitted)).

## C.

Rickard argues that the District Court erred when it permitted the Government to permit an alleged co-conspirator to testify that he and Rickard had a history of participating in real estate transactions that he believed to be illegal. Even assuming that the District Court's decision to permit the co-conspirator's testimony was in error,[4] it does not warrant reversal because it is highly probable that the error did not contribute to Rickard's convictions. *See United States v. Casseus*, 282 F.3d 253, 256 (3d Cir. 2002) ("[A] non-constitutional error committed at trial does not warrant reversal where it is highly probable that the error did not contribute to the judgment." (internal quotations and citation omitted)). Rickard's prior dealings with the alleged co-conspirator played a minor role in the Government's case. Indeed, the Government did not mention it in either its opening or closing arguments. Additionally, on cross-examination, the co-conspirator admitted that he did not know whether the prior dealings were legal or illegal. Finally, the evidence against Rickard, which we discussed above, is more than enough to establish that Rickard committed the charged crimes. Accordingly, if the District Court erred, it was harmless error. *See* Fed. R. Crim. P. 52(a).

## D.

Rickard claims that the District Court abused its discretion by issuing a "willful

---

[4]Nothing in our discussion should be construed as suggesting that the District Court actually erred by permitting this testimony.

blindness" instruction to the jury. Rickard does not assert that the instruction itself was in any way inadequate; her only claim is that the instruction should not have been issued in the first place. Since she did not object to this instruction at trial, our review is for plain error. *See* Fed. R. Crim. P. 30(d); *United States v. Flores*, 454 F.3d 149, 156 (3d Cir. 2006) (reviewing for plain error where the defendant failed "to raise his objection to the willful blindness instruction at trial").

Here, we see no "'error' that is 'plain' and that 'affect[s] substantial rights.'" *United States v. Olano*, 507 U.S. 725, 732 (1993). Among other things, the Government introduced evidence that Rickard received monies from the home sales well in excess of the three percent commission she was due for each closing. Based on this evidence, a jury could have found that Rickard deliberately closed her eyes to the obvious disparity between the funds she received and the amount she was owed. Therefore, the willful blindness instruction was properly given. *See United States v. Leahy*, 445 F.3d 634, 652 (3d Cir. 2006) ("A willful blindness instruction is also proper when the jury could have found that the defendant deliberately closed his eyes to what otherwise would have been obvious to him." (internal quotations and citation omitted)).

E.

Rickard argues that the evidence did not justify the District Court's determination that she was an organizer or a leader subject to a four-level enhancement under United States Sentencing Guidelines § 3B1.1(a). We disagree. As discussed above, trial evidence showed that Rickard was responsible for the closings, including preparing fraudulent closing documents, and that she directed the distribution of the proceeds from

the home sales. The Government also introduced evidence that she supervised and directed other co-conspirators, like the lawyer she used to conduct the closings. In light of this evidence, the District Court did not clearly err in concluding that Rickard was an organizer or a leader, and we will affirm Rickard's sentence. *United States v. Wise*, 515 F.3d 207, 217 (3d Cir. 2008) ("[I]f the asserted procedural error is purely factual, our review is highly deferential and we will conclude there has been an abuse of discretion only if the district court's findings are clearly erroneous.").

V.

Davis raises five issues on appeal: 1) the District Court erred in failing to dismiss the jury venire; 2) the evidence was insufficient to sustain Davis's convictions; 3) the District Court erred in its instruction to the jury concerning materiality; 4) the Government failed to produce Jencks Act material; and 5) Davis' sentence was unreasonable.

A.

On the first day of trial, Davis objected to the composition of the jury venire because she observed only one African American among the pool of forty-three potential jurors.[5] Following argument the next day, the District Court denied Davis' request for a new venire. On appeal, Davis claims that the District Court erred in refusing to replace the jury venire with a new one and, in the alternative, for denying her post-trial request for a hearing on the jury selection process used. We see no error. Davis has not provided

---

[5]The jury venire contained multiple individuals from other minority groups.

8

a shred of evidence that the alleged underrepresentation of African Americans was caused by the systematic exclusion of African Americans from the jury selection process.[6] Therefore, she has failed to establish a prima facie violation of either the fair cross section requirement of the Sixth Amendment or the Jury Selection and Service Act, 28 U.S.C. § 1861 et seq., and was entitled to neither a new pool of potential jurors nor a hearing on the jury selection process used. *See United States v. Weaver*, 267 F.3d 231, 237 (3d Cir. 2001) ("In order to establish a prima facie violation of the fair cross section requirement of the Sixth Amendment and the [Jury Selection and Service] Act, the defendant must demonstrate: . . . (3) the underrepresentation is caused by the 'systematic exclusion of the group in the jury selection process.'" (quoting *Duren v. Missouri*, 439 U.S. 357, 364 (1979))); *see also* 28 U.S.C. § 1867(d).

## B.

Davis claims that the evidence was insufficient to sustain her convictions because the Government never proved that she intended to deprive the victim banks of money or property. Evaluating this assertion requires us to "determine whether the evidence submitted at trial, when viewed in the light most favorable to the government, would allow a rational trier of fact to convict." *United States v. Hart*, 273 F.3d 363, 371 (3d Cir.

---

[6]Davis relies on post-trial evidentiary submissions that African Americans constitute over 15% of the population in the counties from which the jury pool was drawn. Based on these statistics, Davis claims that there should have been about six African Americans in the pool of potential jurors. This is not evidence of systematic exclusion. At best, it is evidence that an underrepresentation has occurred once, but it does not shed any light on its cause—for example, an inherent deficiency in the jury selection process, or pure chance.

2001) (internal quotations and citation omitted). Here, the evidence was plainly sufficient. Davis admits that the evidence showed that she provided the victim banks with false information concerning the straw purchasers' jobs, income, and savings. Employees from the victim banks also testified that they would not have made the loans had they known about the false information that Davis provided. Viewed in the light most favorable to the Government, this evidence is sufficient to allow a rational trier of fact to conclude beyond a reasonable doubt that Davis acted with "an intent to deceive the bank in order to obtain from it money or other property." *Leahy*, 445 F.3d at 644 n.8 (internal quotations and citation omitted).[7]

## C.

In its final charge, the District Court instructed the jury that a statement is material if it were "one that a reasonable person may have considered important in making his or her decision." (S.A. 1934.) Davis asserts that the District Court erred in refusing her suggestion to instruct the jury to determine the materiality of a misrepresentation through the eyes of a bank officer, rather than those of a reasonable person. Davis admits that the District Court's "reasonable person" instruction was a correct statement of the law in the

---

[7]Davis posits that she never had any intent to defraud because, even though she submitted false information, her understanding was that "the banks were anxious to issue these loans without regard to the information supplied . . . ." Davis' Br. at 47. According to Davis, her intent "was merely to use the banks to obtain money for the purchase and renovation of the properties, and to repay them in full, with interest, upon reselling the improved properties." Davis' Reply Br. at 3. Certainly, Davis was entitled to argue this as a defense at trial, which she did. But the jury was equally entitled to reject her argument, which it did by returning guilty verdicts. After all, "[f]raudulent intent, although a subjective state of mind, can be inferred by means of objective standards." *United States v. Vandersee*, 279 F.2d 176, 179 (3d Cir. 1960).

ordinary case. Nonetheless, she claims that the District Court erred in denying her requested instruction because it was not only correct, but also "not substantially covered by the instructions given, and was so consequential that the refusal to give the instruction was prejudicial to the defendant." *United States v. Phillips*, 959 F.2d 1187, 1191 (3d Cir. 1992).

We see no error in the District Court's decision because Davis' proposed instruction is not a correct statement of the law. In support of her position, Davis relies on the Restatement (Second) of Torts § 538(2)(b), which provides that "[t]he matter is material if . . . (b) the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action, although a reasonable man would not so regard it." While Section 538(2)(b) does state that a statement may be material if "its recipient" is likely to regard it as such, this applies where "a reasonable man would not so regard." Accordingly, Section 538(2)(b) acts to supplement, not replace, the "reasonable person" standard for judging materiality. Davis' requested instruction, however, simply substitutes "bank officer" for "reasonable person," and does not make any mention of the reasonable person standard at all. Therefore, Davis' requested instruction is an incorrect statement of the law, and the District Court did not err in denying its inclusion in the jury charge.

D.

Davis appeals the District Court's determination that the Jencks Act, 18 U.S.C. § 3500, did not require the Government to produce a transcript of a Government witness' prior interview. Under the Jencks Act, "[a]fter a witness called by the United States has

11

testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." 18 U.S.C. § 3500(b). Here, it is clear that the transcript is not Jencks Act material because it was not "in the possession of the United States." The Government witness was interviewed in connection with a private inquiry involving one of the victim banks and a third party, not any criminal case.[8] The resulting transcript was in the victim bank's possession and was not given to the Government because of privilege and confidentiality concerns. Therefore, the Government was not obligated to produce the transcript as Jencks Act material. *See United States v. Reyeros*, 537 F.3d 270, 285 (3d Cir. 2008) ("We have held that the phrase 'in the possession of the United States' should be read to 'require production only of statements possessed by the prosecutorial arm of the federal government.'" (quoting *United States v. Merlino*, 349 F.3d 144, 155 (3d Cir. 2003))).[9]

E.

---

[8] Accordingly, we reject Davis' argument that the Government and the bank were acting as a "team."

[9] Davis argues that after the District Court determined that the transcript was not Jencks Act material, the Government obtained possession of it when the District Court gave it to the Government following an in camera review for potential impeachment evidence. Even if this were true, it does not automatically impose an obligation on the Government to produce the transcript or to preserve it for appellate review. Davis was present when the District Court gave the Government the transcript. Davis did not renew her Jencks Act motion or otherwise objected to the transcript's withholding at that time. As a result, the Government was entitled to rely on the District Court's earlier ruling, which permitted the Government to treat the transcript as non-Jencks Act material.

12

Davis makes four claims of error relating to her sentence.[10] None of them has merit.

First, Davis urges us to read the "gross receipts" language contained in United States Sentencing Guidelines § 2B1.1(b)(12)(A) (2002) to mean "gross receipts kept by the defendant being sentenced." We will not do so. Not only is Davis' proposed interpretation contrary to the plain meaning of the Guidelines' text, it is contrary to our case law. *See United States v. Bennett*, 161 F.3d 171, 193 (3d Cir. 1998) (holding that for the purposes of calculating the "gross receipts from the offense" pursuant to United States Sentencing Guidelines § 2F1.1(b)(6)(B), "it is irrelevant how [the defendant] spent the money after he obtained it").[11]

Second, Davis claims that the District Court erred in applying a four-level enhancement pursuant to United States Sentencing Guidelines § 3B1.1(a) because she was not an "organizer or leader" in the scheme. This assertion is plainly belied by the record. At trial, the Government introduced evidence that Davis identified the properties involved in the scheme, determined the inflated purchase prices sent to the victim banks,

---

[10]In her reply brief, Davis argued for the first time that the total loss resulting from the scheme was incorrectly calculated. Since she did not raise this claim before, we will not consider it. *See United States v. Geevers*, 226 F.3d 186, 196 n.9 (3d Cir. 2000) ("A reply brief is generally too late to raise an issue under our jurisprudence.").

[11]We do not mean to suggest that "gross receipts" includes monies that Davis initially received, but later disbursed to her co-conspirators. *See* U.S. Sentencing Guidelines Manual § 2B1.1 cmt. 9 (2002) (referring to "gross receipts" as the property obtained by the "defendant individually, rather than to all participants . . . ."). Here, the record supports a finding that Davis received more than $1,000,000 from the conspiracy even after deducting monies paid to her co-conspirators.

recruited straw buyers, obtained false financial documents to send to the victim banks, created "dummy" corporations to verify the false employment information provided to the victim banks, and introduced other co-conspirators into the scheme. Based on this evidence, the District Court did not clearly err in concluding that Davis was an "organizer or leader" or in applying Section 3B1.1's four-level enhancement. *See Wise*, 515 F.3d at 217.[12]

Third, Davis asks us to review the District Court's denial of her downward departure motion, but we have no jurisdiction to do so. *See United States v. Vargas*, 477 F.3d 94, 103 (3d Cir. 2007) ("We do not have jurisdiction to review discretionary decisions by district courts to not depart downward.").

Fourth, Davis asserts that her within-Guidelines range sentence of 151 months of imprisonment was unreasonable. On appeal, Davis makes the same arguments for a lower sentence that she did at her sentencing hearing. The record shows that the District Court gave full and fair consideration to each of these arguments before imposing a sentence. Nor do we believe that the sentence imposed was substantively unreasonable. Therefore, we will affirm the District Court's determination. *See United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009) ("[I]f the district court's sentence is procedurally sound, we will affirm it unless no reasonable sentencing court would have imposed the same

---

[12]We also reject Davis' argument that she was never an organizer of people. The trial evidence showed that Davis recruited straw buyers, introduced co-conspirators into the scheme, and paid co-conspirators to create the necessary false financial documentation. Therefore, it is clear that Davis "exercised some degree of control over others involved in the commission of the offense." *Phillips*, 959 F.2d at 1191 (internal quotations and citation omitted).

14

sentence on that particular defendant for the reasons the district court provided.").